**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Stern,<br><br>            Plaintiff,<br><br>v.<br><br>National Railroad Passenger Corporation,<br><br>            Defendant. | No. CV-24-02910-PHX-MTL<br><br>**ORDER** |

Before the Court is the Motion for Judgment on the Pleadings (Doc. 18) filed by Defendant National Railroad Passenger Corporation d/b/a/ Amtrak ("Amtrak").

**I.      BACKGROUND**

Plaintiff Nicholas Stern ("Stern") worked as a railroad conductor for more than a decade. (Doc. 1 ¶ 2.) He underwent testing and licensure renewal every three years. (*Id.*) These periodic renewals ensured Stern met federal safety requirements. (*See id.* ¶ 1.)

Amtrak, as Stern's employer, administered his licensure and renewal. (*Id.* ¶ 2.) Part of this process involved testing Stern's color vision and visual acuity. (*See id.* ¶ 9, ¶¶ 14-15.) "Stern suffers from a genetic anomaly that causes him to be color-vision deficient." (*Id.* ¶ 19.) "Amtrak knew Stern was color-vision deficient when it hired him," and the company previously found Stern met federal vision requirements despite being color deficient. (*See id.* ¶¶ 21-22.) But in 2021, Sten alleges "Amtrak had [him] submit to a field [vision] test that did not mirror what he must see in the field." (*Id.* ¶ 23.) Stern failed the test. (*Id.* ¶ 26.) This lawsuit ensued.

The lawsuit alleges one claim of disability discrimination under the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 31-42.) Amtrak answered the complaint and denied liability. (*See* Doc. 16 at 5-6.) It now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## II.   LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed but early enough not to delay trial." Fed. R. Civ. P. 12(c). The purpose is "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

In deciding a motion for judgment on the pleadings, the analysis begins with the complaint. A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Next, a court must consider whether the answer raises issues of fact or affirmative defenses. *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015). Judgment on the pleadings is improper when factual disputes are present in the pleadings. *See id.* Put differently, judgment on the pleadings may only be granted "when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregations Church*, 887 F.2d 228, 230 (9th Cir. 1989).

## III.   DISCUSSION

Amtrak argues Stern's ADA "claim should be dismissed for two reasons: (1) the Federal Railroad Administration ("FRA") safety regulations preclude application of the [ADA] to Stern's action; and (2) Stern's lack of certification and failure to seek administrative review of the decision means he is not a 'qualified individual' under the ADA." (Doc. 18 at 1) (internal citations omitted).

### A. Preclusion by FRA Safety Regulations and FRSA

Amtrak first challenges Stern's ability to bring an ADA claim. Amtrak's answer lists preclusion as an affirmative defense. (Doc. 16 at 7.) Its motion for judgment on the pleadings explains Stern "challenges the sufficiency of Amtrak's secondary field test." (*See* Doc. 18 at 6-7.) Such a challenge, according to Amtrak, should be brought through the statute that creates the employer-testing regime—the Federal Railroad Safety Act ("FRSA") and FRA safety regulations—not the ADA. (*See id.*) Amtrak cites *Turner v. BNSF Railway Co.*, 23-cv-00681-P, 2023 WL 9052248 (N.D. Tex. Dec. 22, 2023), as support for its argument.

An affirmative defense will normally bar judgment on the pleadings. *Gen. Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 230. But Amtrak's preclusion defense involves a pure question of law. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014) (stating federal preclusion requires statutory interpretation). The Court can consider legal questions when resolving a motion for judgment on the pleadings. *See Unite Here Loc. 19 v. Picayune Rancheria of Chukchansi Indians*, 101 F. Supp. 3d 929, 934 (E.D. Cal. 2015) (finding affirmative defenses raising only questions of law do not preclude judgment on the pleadings).

Preclusion between two federal statutes requires considering the established principles of statutory interpretation. *See POM Wonderful LLC*, 573 U.S. at 112. Analysis begins "with the text of the two statutes" at issue. *Id.* at 113. It then shifts to each statute's structure, scope, and purpose. *See id.* at 115.

#### 1. Statutory Text

The FRSA vests the Secretary of Transportation with authority "to prescribe regulations and issue orders related to qualifications of employees." 49 U.S.C. 20110(1). The secretary does so through comprehensive regulations promulgated through the FRA. *See Carpenter v. Mineta*, 432 F.3d 1029, 1031 (9th Cir. 2005). "The FRA does not actively participate in [conductor] testing or certification, but administers the regulation[s] through approval and monitoring of individual railroads' programs, including their training and

testing regime[s]." *See id.*

Related to color vision and visual acuity, the FRA requires railroad conductors have "[t]he ability to recognize and distinguish between the colors of railroad signals, as demonstrated by successfully completing one of the tests in appendix D." 49 C.F.R. § 242.117(h)(3). Appendix D lists accepted color visions tests, such as the Ishihara 14-plate color vision test, and outlines each test's failure criteria. 49 C.F.R. App. D(2). A conductor who initially fails their color vision test can request "further medical evaluation by a railroad's medical examiner." 49 C.F.R. § 242.117(j). The medical examiner must determine "that person's ability to safely perform as a conductor," but the specifics of an evaluation are largely left to the medical examiner's discretion. *See* 49 C.F.R. § 242.117(j). "Ophthalmologic referral[s], field testing, or other practical color testing may be utilized depending on the experience of the examinee." 49 C.F.R. App. D(4). The only statutory requirement is a conductor "is entitled to one retest without making any showing and to another retest if the [conductor] provides evidence substantiating that circumstances have changed since the last test." 49 C.F.R. § 242.117(j).

The FRA also provides an administrative review process. "Any person who has been . . . denied recertification . . . and believes that a railroad incorrectly determined that he or she failed to meet the certification requirements . . . may petition the Federal Railroad Administrator to review the railroad's decision." 49 C.F.R. § 242.501(a). Review includes considering information submitted by the parties, *see* 49 C.F.R. § 242.505, and a possible hearing, 49 C.F.R. § 242.509. Final agency action occurs upon issuance of a written decision, 49 C.F.R. § 242.509(u), or upon deciding an administrative appeal, 49 C.F.R. § 242.511(e).

Although the FRSA imposes a detailed process for assessing color vision, both it and the ADA lack an important element of preclusion: "express terms" that "forbid[] or limit[]" one claim over the other. *See POM Wonderful LLC*, 573 U.S. at 113. The administrative review process states an aggrieved employee "*may* petition the Federal Railroad Administrator to review the railroad's decision." 49 C.F.R. § 242.501(a)

(emphasis added). But such a discretionary avenue of relief falls short of forbidding or limiting an ADA claim. *See POM Wonderful LLC*, 573 U.S. at 113; *DeFries v. Union P. R.R.*, 3:21-cv-205-SI, 2025 WL 1029283, at *7 (D. Or. Apr. 7, 2025) (finding the FRA safety regulations do not require administrative review). The existence of one avenue of relief does not, without strong evidence of congressional intent, preclude the availability of another. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments . . . ."). Especially considering mandatory language—"must" or "shall"—is present in other areas of the FRA safety regulations, indicating the discretionary language was intentional. *See, e.g.*, 49 C.F.R. § 242.511(a) ("[An] appeal must be filed within 35 days of issuance of the decision."). There is nothing on the face of the FRSA or FRA safety regulations to preclude Stern's ADA claim.

Amtrak argues Stern's ADA claim is improper because it challenges "the sufficiency of Amtrak's secondary field test." (*See* Doc. 18 at 5.) This argument, which is similar to the one accepted in *Turner*, argues the FRSA administrative review process precludes all other types of challenges arising out of railroad licensure and renewal. *See* 2023 WL 9052248 at *2-3. The Court finds Amtrak's argument unpersuasive. The Ninth Circuit Court of Appeals has already held railroad employees can seek relief outside of the FRSA. *See Carpenter v. Mineta*, 432 F.3d 1029, 1035 (9th Cir. 2005). Amtrak further does not adequately explain how a discretionary process can preclude statutes in totally separate areas of law. *See Morton*, 417 U.S. at 551 (stating two statutes touching on the same subject matter still must demonstrate express congressional intent for preclusion). The statutory text does not suggest the FRSA or FRA safety regulations preclude ADA claims.

### 2. Structure, Scope, and Purpose

Two additional sections help determine the appropriateness of preclusion. The FRSA contains protections for railroad employees against retaliation or "other discrimination." *See* 49 U.S.C. § 20109(a)-(c). An employee "who alleges discharge, discipline, or other discrimination" related to unlawful conduct or workplace safety can

seek relief through the FRSA. *See* 49 U.S.C. § 20109(d). That avenue of relief, however, in no way "preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law." 49 U.S.C. § 20109(g).

The FRSA also addresses state regulations. It preempts, "to the extent practicable," state laws dealing with railroad safety. 49 U.S.C. § 20106(a)(1). The "extent practicable" language allows a state to adopt or enforce "an additional or more stringent law, regulation, or order related to railroad safety or security," provided the law is essential to local safety or security, not incompatible with federal law, and not unreasonably burdensome on interstate commerce. *See* 49 U.S.C. § 20106(a)(2).

By already speaking on discrimination and preemption, Congress indicated an intent to allow other regulations that fit within the FRSA's statutory structure. *See POM Wonderful LLC*, 573 U.S. at 114. The ADA is a federal law not covered under the FRSA's preemption language. *See* 49 U.S.C. § 20106(a)(1). It further would be considered another safeguard against discrimination, which the FRSA's employee protection statute in no way "preempts or diminishes." *See* 49 U.S.C. § 20109(g). There is nothing in the structure of the FRSA to indicate Congress intended to preclude ADA claims.

Federal statutes complement each other when they "impose different requirements and protections." *POM Wonderful LLC*, 573 U.S. at 115 (quoting *J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001)) (internal quotation marks omitted). The ADA protects individuals against discrimination primarily through private rights of action. *See* 42 U.S.C. § 12112. This is different than the FRSA's focus on railroad safety and allowing employees to vindicate their rights through administrative proceedings. *See, e.g.*, 49 U.S.C. § 20109(d). The two statutes can operate in tandem, and their scope does not show preclusive intent. *See DeFries*, 2025 WL 1029283, at *10; *see also POM Wonderful LLC*, 573 U.S. at 115 ("When two statutes complement each other, it would show disregard to the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other.").

The FRSA seeks "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The ADA seeks to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" with "clear, strong, consistent, enforceable standards" to address such discrimination. *See* 42 U.S.C. § 12101(b)(1)-(2). The United States Supreme Court has already held a statute designed to promote "national uniformity" does not reflect congressional intent to preclude other federal statutes. *POM Wonderful LLC*, 573 U.S. at 117. This is because "the application of a federal statute . . . by judges and juries in courts throughout the country may give rise to some variation in outcome," but this does not mean disuniformity would arise by allowing multiple federal statues to touch on similar subject matter. *See id.* "Congress, not infrequently, permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important." *Id.* The previous analysis shows the FRSA's purpose to promotion safety in railroad operations does not indicate an intent to preclude the ADA.

With the FRSA's statutory text, structure, scope, and purpose all indicating preclusion is not appropriate, the Court rejects Amtrak's first argument. Preclusion is not an appropriate basis for judgment on the pleadings.

**B.     "Qualified Individual" Under the ADA**

Amtrak next challenges the merits of Stern's ADA claim. This challenge was raised as an affirmative defense in Amtrak's answer. (Doc. 16 at 9.) Its motion for judgment on the pleadings explains Stern must meet the initial burden of showing he is a "qualified individual" to bring an ADA discrimination claim. (Doc. 18 at 7-8.) It continues Stern cannot satisfy that prerequisite because "it is undisputed [] he did not possess the requisite job-related requirements of employment—namely, his conductor certification." (*Id*. at 8)

An employer, under the ADA, cannot "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a prima facie ADA discrimination claim, a plaintiff must plausibly allege they (1) are disabled within

- 7 -

the meaning of the ADA; (2) are a qualified individual with a disability; and (3) were discriminated against because of their disability. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The second element requires "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* (quoting *Nunes v. Wal-Mart Stores, Inc.* 164 F.3d 1243, 1246 (9th Cir. 1999)).

Stern alleges he "suffers from a genetic anomaly that causes him to be color-vision deficient." (Doc. 1 ¶ 19.) Stern further alleges Amtrak did not allow him to take a field vision test that "mirrored what he must see to safely do his job." (*Id.* ¶ 28.) Were he allowed to take such a test, Stern alleges he would have passed. (*Id.* ¶ 23.) Amtrak denies these allegations or states it lacks sufficient information to respond. (Doc. 16 ¶ 19, ¶ 23, ¶ 28.) These responses create a factual dispute over every element of Stern's ADA claim. With factual disputes present, judgment on the pleadings is not appropriate. *Pit River Tribe*, 793 F.3d at 1159 (stating judgment on the pleadings is improper when factual disputes are present in the pleadings).

Amtrak argues the revocation of Stern's conductor certification means he cannot plausibly allege he is a "qualified individual." (Doc. 18 at 7-8.) The Ninth Circuit Court of Appeals rejected a similar argument in *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990-91 (9th Cir. 2007). There, the Ninth Circuit explained essential functions of employment are different from employer-created qualification standards. *See id.* at 990. Essential functions are "fundamental job duties of the employment position." *Id.* (quoting 29 C.F.R. § 1630.2(n)(1)). Whereas qualification standards are "personal and professional attributes" that could include "physical, medical, [and] safety requirements." *Id.* (quoting 29 C.F.R. § 1630.2(q)). An ADA plaintiff is not required to show they meet qualification standards set by an employer. *Id.* Doing so would make little sense because an ADA discrimination claim can be entirely based on a qualification standard being discriminatory. *See id.* An employer bears the burden of showing their qualification standards equate to an ADA plaintiff being unable to perform essential functions of a job. *See id.* at 991. Amtrak

- 8 -

confuses a qualification standard—Stern needing to have a conductor certification—with an essential function. (*See* Doc. 18 at 7-8.) This argument is unpersuasive.

For these reasons, Amtrak is not entitled to judgment on the pleadings.

**IT IS THEREFORE ORDERED** that the Motion for Judgment on the Pleadings (Doc. 18) is denied.

**IT IS FURTHER ORDERED** vacating the motion hearing set for May 6, 2025, at 10:30 a.m.

Dated this 28th day of April, 2025.

Michael T. Liburdi
United States District Judge